IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| SAMUEL ZOOK, MICHELLE McLAIN-KRUSE, BIRGITTA MEADE, and ANNETTE LAITINEN,<br><br>Plaintiffs,<br><br>vs.<br><br>LISA JACKSON and the UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,<br><br>Defendants. | No. C 12-2046<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

Come now the Plaintiffs and for cause of action state:

## INTRODUCTION

1. This case is brought pursuant to the Administrative Procedure Act to require the Defendants to regulate air pollutants from animal feeding operations (AFOs) under the Clean Air Act.

2. Numerous scientific studies, air quality monitoring, and other data clearly show that the air pollutants from AFOs endanger public health and welfare. As such, they should be regulated under the Clean Air Act.

3. The Defendants have failed to list these pollutants as regulated pollutants and to list AFOs as stationary sources to be regulated under the Clean Air Act, and such failure is arbitrary and capricious, unreasonable, and an abuse of discretion.

## JURISDICTION AND VENUE

4. Jurisdiction over Plaintiffs' claims is conferred on this Court by 28 U.S.C. § 1331, which authorizes jurisdiction over claims arising under federal law. The federal laws at issue are 42 U.S.C. § 7401 et seq (the Clean Air Act).

5. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391, because the Plaintiffs all reside in Winneshiek County, Iowa, and the AFOs affecting the Plaintiffs are in Winneshiek County, Iowa. Winneshiek County is in the Northern District of Iowa.

6. Plaintiffs have exhausted all administrative remedies and have no other adequate remedy at law.

## PARTIES

7. Plaintiff Samuel Zook is a resident of Winneshiek County, Iowa, and has lived there all of this life. He is currently a student at Luther College in Decorah, Iowa. Mr. Zook attended school at North Winneshiek School. He was one of the subjects in a study conducted of asthma in children at two elementary schools in Iowa, as described in Paragraph 19 below. Mr. Zook suffers from asthma.

8. Plaintiff Michelle McLain-Kruse is a resident of Winneshiek County, Iowa. She has a child who attends North Winneshiek School and who is subject to the same exposure

to air emissions from CAFOs as was found in the study described in Paragraph 19 below.

9. Plaintiff Birgitta Meade is a resident of Winneshiek County, Iowa. She is a science teacher at North Winneshiek School. As such, she is subject to the same exposure to air emissions from CAFOs as was found in the study described in Paragraph 19 below.

10. Plaintiff Annette Laitinen is a resident of Winneshiek County, Iowa. She has a child who attends North Winneshiek School and who is subject to the same exposure to air emissions from CAFOs as was found in the study described in Paragraph 19 below.

11. Defendant Lisa Jackson is sued in her capacity as Administrator of the United States Environmental Protection Agency.

12. Defendant United States Environmental Protection Agency is the federal agency charged by Congress with implementation and enforcement of the Clean Air Act directly and through supervision of delegated state programs.

## FACTUAL ALLEGATIONS

13. AFOs, especially those classified as concentrated animal feeding operations (CAFOs), have significantly

increased in numbers in Iowa, and nationally, over the past 20 years.

14. Scientific studies over the past several years have confirmed that emissions of pollutants from AFOs, such as ammonia, hydrogen sulfide, particulate matter, and volatile organic compounds, cause health effects on people near the AFOs. Some of these studies have specifically studied AFOs in Iowa, and one study was even focused on North Winneshiek School.

15. In 2001, the Emission Standards Division of the Environmental Protection Agency issued a report documenting the nature and effects of air emissions from AFOs.

16. In 2002 a team of scientists from Iowa State University and the University of Iowa completed a report on air emissions from AFOs. The authors of the report made a recommendation, based on their review of credible AFO emissions research, that EPA should regulate certain pollutants released from AFOs – namely ammonia, hydrogen sulfide, and odor – under the Clean Air Act.

17. Also, in 2002, the Ad Hoc Commission on Air Emissions From Animal Feeding Operations, issued a report documenting the health effects of air pollutants from CAFOs. This report was funded in part by a contract between

the National Academy of Sciences and the Environmental Protection Agency.

18. In 2003, a report was released in Missouri reporting the results of an ammonia exposure investigation in a community near a large swine CAFO. Monitoring results from six houses showed ammonia levels above the minimal risk levels. In response, EPA issued a memo stating that "the conclusion could be drawn that a public health hazard did exist at the time the . . . data was acquired."

19. In 2006, results were published of a study of asthma in children at two elementary schools in Iowa. One of the schools was near a hog CAFO and the other school was at least 10 miles from the nearest CAFO. As it turns out, the school near the CAFO was North Winnehiek School. The study found a significantly higher rate of asthma among children in North Winneshiek School than in the other school.

20. In 2008, the Pew Commission on Industrial Farm Animal Production released a comprehensive report on the impacts of industrial livestock production. This report concluded that "EPA should develop a standardized approach for regulating air pollution" from AFOs under the Clean Air Act.

21. In 2009, researchers from the University of Georgia released the results of a study of ammonia concentrations in the ambient air near poultry houses. The study indicated that just one broiler CAFO with fewer than 100,000 birds can cause ambient ammonia levels to exceed chronic and acute health exposure limits.

22. Pursuant to an agreement between EPA and the livestock industry in 2005, the industry funded a study of air emissions from AFOs. The results of this National Air Emissions Monitoring Study (NAEMS) were published in January of 2011. That data showed levels of ammonia, particulate matter, and hydrogen sulfide in excess of federal air quality standards.

23. In 2011, a study was conducted in 40 homes in the Yakima Valley in Washington State where 61 dairy CAFOs operate. Airborne contaminants were found in significantly greater levels at homes near dairy CAFOs. The study concluded that dairy operations increase community exposure to pollutants with known human health effects.

24. A more complete list of studies and articles relating to pollution from AFOs is hereto attached as Exhibit 1 and by this reference made a part hereof.

25. The Environmental Protection Agency has known of these studies for years, but the agency has taken no action to regulate these pollutants from AFOs.

## STATUTORY AND REGULATORY FRAMEWORK

26. Section 108 of the Clean Air Act, 42 U.S.C. § 7408, sets out the requirements for establishing and regulating criteria pollutants:

> (a) Air Pollutant List; publication and revision by Administrator; issuance of air quality criteria for pollutants.
>
> (1) For the purpose of establishing national primary and secondary ambient air quality standards, the Administrator shall within 30 days after December 31, 1970, publish, and shall from time to time thereafter revise, a list which includes each air pollutant -
>
> (A) emissions of which, in his judgment, cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare;
> (B) the presence of which in the ambient air results from numerous or diverse mobile or stationary sources; and
> (C) for which air quality criteria had not been issued before December 31, 1970, but for which he plans to issue air quality criteria under this section.

27. Section 109 of the Clean Air Act, 42 U.S.C. § 7409, which comes into play after the listing of criteria pollutants pursuant to Section 108, provides:

> (a) Promulgation.
>
> (1) The Administrator –

        (A) within 30 days after the date of enactment of the Clean Air Amendments of 1970, shall publish proposed regulations prescribing a national primary ambient air standard and a national secondary ambient air quality standard for each air pollutant for which air quality criteria have been issued prior to such date of enactment; and

        (B) after a reasonable time for interested persons to submit written comments thereon (but no later than 90 days after the initial publication of such proposed standards) shall by regulation promulgate such proposed national primary and secondary ambient air quality standards with such modifications as he deems appropriate.

    (2) With respect to any air pollutant for which air quality criteria are issued after the date of enactment of the Clean Air Amendments of 1970, the Administrator shall publish, simultaneously with the issuance of such criteria and information, proposed national primary and secondary ambient air quality standards for any such pollutant. The procedure provided in paragraph (1)(B) of this subsection shall apply to the promulgation of such standards.

(b) Protection of public health and welfare.

    (1) National primary ambient air quality standards, prescribed under subsection (a) shall be ambient air quality standards the attainment and maintenance of which in the judgment of the Administrator, based on such criteria and allowing an adequate margin of safety, are requisite to protect the public health. Such primary standards may be revised in the same manner as promulgated.

    (2) Any national secondary ambient air quality standard prescribed under subsection (a) shall specify a level of air quality the

>>attainment and maintenance of which in the judgment of the Administrator, based on such criteria, is requisite to protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutant in the ambient air. Such secondary standards may be revised in the same manner as promulgated.

>> **************

>(c) Review and revision of criteria and standards; independent scientific review committee; appointment; advisory functions.

>>(1) Not later than December 31, 1980, and at five-year intervals thereafter, the Administrator shall complete a thorough review of the criteria published under section 108 [42 U.S.C. § 7408] and the national ambient air quality standards promulgated under this section and shall make such revisions in such criteria and standards and promulgate such new standards as may be appropriate in accordance with section 108 and subsection (b) of this section. The Administrator may review and revise criteria or promulgate new standards earlier or more frequently than required under this paragraph.

28. Section 111 of the Clean Air Act (42 U.S.C. § 7411), sets out the requirements for designating and listing stationary sources of air pollutants that must be regulated by the EPA:

>(b) List of categories of stationary sources; standards of performance; information on pollution control techniques; sources owned or operated by United States; particular systems; revised standards.

>>(1)(A) The Administrator shall, within 90 days after the date of enactment of the Clean Air

>        Amendments of 1970, publish (and from time to
>        time thereafter shall revise) a list of
>        categories of stationary sources. He shall
>        include a category of sources in such list if in
>        his judgment it causes, or contributes
>        significantly to, air pollution which may
>        reasonably be anticipated to endanger public
>        health and welfare.
>        (B) Within one year after the inclusion of a
>        category of stationary sources in a list under
>        subparagraph (A), the Administrator shall publish
>        proposed regulations, establishing Federal
>        standards of performance for new sources within
>        such category. The Administrator shall afford
>        interested persons an opportunity for written
>        comment on such proposed regulations. After
>        considering such comments, he shall promulgate,
>        within one year after such publication, such
>        standards with such modifications as he deems
>        appropriate.

<u>PLAINTIFFS' CLAIMS</u>

<u>FIRST CLAIM FOR RELIEF</u>

29. Sections 108 and 109 of the Clean Air Act, 42 U.S.C. §§ 7408 and 7409, require the Defendants to list pollutants that may reasonably be anticipated to endanger public health or welfare, and to establish ambient air quality standards for such pollutants.

30. Air pollutants from AFOs, including ammonia and hydrogen sulfide, should be listed as criteria pollutants and ambient air quality standards should be issued for them.

31. The Defendants have failed to comply with the requirements of Sections 108 and 109, in spite of the clear

evidence that air pollutants from AFOs endanger public health and welfare.

32. The Defendants' failure to act is a violation of the Administrative Procedure Act, 5 U.S.C. § 706, because it is action that has been unlawfully withheld or unreasonably delayed, and is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Agency action includes an agency's failure to act. 5 U.S.C. § 551(13).

## SECOND CLAIM FOR RELIEF

33. Section 111 of the Clean Air Act, 42 U.S.C. § 7411, requires the Defendants to list stationary sources of air pollution if those sources may reasonably be anticipated to endanger public health and welfare.

34. AFOs should be listed as stationary sources of air pollution.

35. The Defendants have failed to comply with the requirements of Section 111, in spite of the clear evidence that air pollutants from AFOs endanger public health and welfare.

36. The Defendants' failure to act is a violation of the Administrative Procedure Act, 5 U.S.C. § 706, because it is action that has been unlawfully withheld or unreasonably delayed, and is arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law. Agency action includes an agency's failure to act. 5 U.S.C. § 551(13).

RELIEF REQUESTED

WHEREFORE, the Plaintiffs request that this Court:

A. Enter judgment declaring that the Defendants have not complied with the law as set forth herein and that such failure is a violation of the relevant provisions of the Clean Air Act and the Administrative Procedure Act.

B. Enter judgment ordering the Defendants to comply with the law by listing pollutants from AFOs as criteria pollutants and establishing ambient air quality standards for those pollutants, and by listing AFOs as stationary sources of air pollution.

C. Retain jurisdiction of this action to ensure compliance with it judgment.

D. Award Plaintiffs their reasonable attorney fees and expenses incurred in this litigation.

E. Grant Plaintiffs such other and further relief as the Court deems just and equitable in the premises.

/s/ *Wallace L. Taylor*
WALLACE L. TAYLOR AT0007714
Attorney at Law
118 3rd Ave. S.E., Suite 326
Cedar Rapids, Iowa 52401
319-366-2428;(Fax)319-366-3886
e-mail: wtaylorlaw@aol.com

ATTORNEY FOR PLAINTIFFS